EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis P. Costas Elena y otros<br><br>Peticionarios<br><br>v.<br><br>Magic Sport Culinary Corp. y otros<br><br>Recurridos | Certiorari<br><br>2024 TSPR 13<br><br>213 DPR ___ |

Número del Caso: CC-2023-0237


Fecha: 16 de febrero de 2024


Tribunal de Apelaciones:

　　　Panel IV


Abogado de la parte peticionaria:

　　　Lcdo. Gorman A. Hatcher Santaella


Materia: Ley contra el Crimen Organizado y Lavado de Dinero – Naturaleza independiente de una reclamación civil de compensación triple por daños y de la acción criminal al amparo de la legislación.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis P. Costas Elena y otros

    Peticionarios

       v.                      CC-2023-0237

Magic Sport Culinary Corp. y otros

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 16 de febrero de 2024.

En esta ocasión nos corresponde determinar si la validez de una reclamación civil de compensación triple por concepto de daños al amparo de la Ley contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico, <u>infra</u>, está atada directamente al resultado de una acción penal relacionada. En otras palabras, debemos resolver si para que proceda esta causa de acción es requisito *sine qua non* contar con una convicción criminal bajo la mencionada ley.

Por los fundamentos que expondremos a continuación, resolvemos en la negativa. La propia Ley contra el Crimen Organizado y Lavado de Dinero

del Estado Libre Asociado de Puerto Rico, _infra_, establece que los remedios o acciones de naturaleza civil provistos por este estatuto podrán instarse, **independientemente de la acción penal u otro remedio disponible en ley**.

I

El 29 de agosto de 2020, el Sr. Luis P. Costas Elena, la Sra. Hazel Russell, y la Sociedad Legal de Bienes Gananciales compuesta por ambos, presentaron una _Demanda_ de daños y perjuicios en contra de Magic Sport Culinary Corp., Miguel A. Colón Molina y otros. En su comparecencia, los peticionarios alegaron que sufrieron daños como consecuencia de varias construcciones ilegales realizadas por los recurridos en una propiedad colindante a la suya, en la Calle Orquídea de la Urbanización Santa María en San Juan.

Según surge del expediente, el señor Costas Elena y la señora Russell denunciaron que Magic Sport Culinary Corp. desarrolla unas edificaciones ilícitas que invaden la distancia mínima requerida entre ambos predios, a pesar de varias órdenes emitidas por el Municipio de San Juan que señalaban la ilegalidad de la obra y ordenaban su paralización. Afirmaron que esto perjudicó su bienestar físico y mental de varias formas, pues son personas de la tercera edad y la construcción afecta su hogar, seguridad y tranquilidad. Por ejemplo, manifestaron que, como la estructura penetra ilegalmente su propiedad, las personas que caminan sobre ella invaden su privacidad, lo que les causa gran temor y desasosiego. Incluso, revelaron que la

construcción ilícita provoca muchos ruidos excesivos, lo que ha afectado su presión sanguínea y les provoca angustias mentales. Aseguran que los actos, ilegalidades y omisiones encabezados por Magic Sport Culinary Corp. han provocado gastos médicos que ascienden los $50,000 y, a su vez, han disminuido el valor de su propiedad en más de $800,000. Peor aún, aseveraron que la continuación de la construcción amenaza con hacer inhabitable el que ha sido su hogar por los pasados 40 años, cuya pérdida estiman en más de cuatro millones de dólares.

Por ello, solicitaron ante el Tribunal de Primera Instancia el pago de $4,050,000 por parte de los recurridos, el desembolso de costas y honorarios de abogado y la demolición de todas las construcciones ilegales realizadas. Además, y en lo que nos atañe, solicitaron la compensación triple por daños otorgada por la Ley contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico, Ley Núm. 33 de 13 de julio de 1978, según enmendada, 25 LPRA sec. 971 *et seq.* (Ley Núm. 33 o Ley contra el Crimen Organizado), y los beneficios de la Carta de Derechos de las Víctimas y Testigos de Delito, Ley Núm. 22 del 22 de abril de 1988, según enmendada, 25 LPRA sec. 973 *et seq.*

En respuesta, el 1 de diciembre de 2020 los recurridos, Magic Sport Culinary Corp. y otros, presentaron su *Contestación a la Demanda y Reconvención*. En síntesis, negaron la mayoría de las alegaciones contenidas en la

demanda y solicitaron indemnización por los daños causados por la alegada persecución maliciosa de parte de los peticionarios Costas y Russell. Asimismo, enfatizaron que en nuestra jurisdicción no procede compensación triple alguna conforme a los hechos de este caso y que los planteamientos sobre la Ley contra el Crimen Organizado son difamatorios y calumniosos.

Tras varios trámites de rigor, el 21 de enero de 2022 los peticionarios Costas y Russell presentaron una *Moción de sentencia sumaria parcial* en la cual solicitaron que se aplicara la doctrina de impedimento colateral por sentencia a fin de que se reconociera que un tribunal de igual jerarquía había decretado previamente que la construcción en cuestión era ilegal.[1] A este respecto, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* en la que declaró ha lugar la moción presentada y consideró probada la ilegalidad de la construcción y la negligencia incurrida por Magic Sport Culinary Corp.

A pesar de esto, el 4 de octubre de 2022 Magic Sport Culinary Corp. y otros presentaron una *Moción de desestimación parcial*. Como entienden que las reclamaciones bajo la Ley contra el Crimen Organizado, supra, y la Carta de Derechos de las Víctimas y Testigos de Delito, supra, no exponen reclamaciones que justifiquen la concesión de un remedio, solicitaron su desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil. 32 LPRA Ap. V. Fundamentaron

---

[1] Caso Núm. SJ2020CV04691.

su postura en que para que se active la compensación triple por daños es requisito indispensable contar con una convicción bajo las disposiciones del Art. 3 de la Ley Núm. 33. En desacuerdo, los esposos Costas y Russell objetaron mediante la presentación de una *Oposición a Moción de Desestimación Parcial y sobre Otros Extremos*.

Evaluadas ambas mociones, así como las alegaciones contenidas en la demanda, el Tribunal de Primera Instancia dictó y notificó otra *Sentencia parcial* el 8 de noviembre de 2022 en la cual declaró ha lugar la moción de desestimación parcial. En consecuencia, desestimó las causas de acción en cuestión e indicó que solamente restaba por dirimir los daños y perjuicios alegados por Costas y Russell.

Inconformes, el señor Costas Elena y la señora Russell presentaron un <u>certiorari</u> ante el Tribunal de Apelaciones. Sostuvieron que el foro primario erró al desestimar sus causas de acción y, con ello, privarles de tener su día en corte. Alegaron que es necesario culminar el descubrimiento de prueba para estar en posición de sustentar sus alegaciones relacionadas a la Ley Núm. 33, <u>supra</u>, y la Ley Núm. 22, <u>supra</u>. En riposta, Magic Sport Culinary Corp. y otros recalcaron que las alegaciones en cuestión dejaban de exponer reclamaciones que justificaran la concesión de un remedio a tenor con la Regla 10.2(5) de Procedimiento Civil, <u>supra</u>.

Tras considerar lo esbozado por ambas partes, el foro apelativo intermedio confirmó la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia. En su determinación razonó que los estatutos invocados eran inaplicables a este caso, por lo que los peticionarios Costas y Russell no tenían una causa de acción válida a su favor. Enfatizó que los remedios provistos por la Ley Núm. 33, supra, están disponibles para personas que hayan sufrido daños provocados por personas convictas bajo dicha ley y cuya reclamación, en virtud del Art. 9, haya sido instada por el Secretario del Departamento Justicia.

En oposición nuevamente, los esposos Costas y Russell solicitaron reconsideración. Alegaron que la parte recurrida, Magic Sport Culinary Corp. y otros, había incurrido en el delito de lavado de dinero y fraude electrónico, en contra de los incisos (e), (f) y (g) del Art. 3 de la Ley Núm. 33, supra. Enfatizaron que el codemandado señor Colón Molina fue acusado por el Departamento de Justicia de Estados Unidos en diciembre de 2022 por usar fondos de las entidades que controlaba a través de los contratos con la Administración de Familias y Niños (ADFAN) para adquirir una lancha de 82 pies y **una propiedad en la calle Orquídea de la urbanización Santa María, en San Juan**. Además, recalcaron que defraudó al gobierno al indicar falsamente que los trabajos de remodelación en el mencionado inmueble eran de $20,000, a fin de evadir las tarifas contributivas de su millonaria edificación.

Como si fuera poco, los esposos Costas y Russell expresaron que el señor Colón Molina fue condenado el 30 de junio de 2021 a dos años de sentencia suspendida por cometer cuatro delitos de evasión contributiva, según la Sección 6041.02 del Código de Rentas Internas de Puerto Rico, Ley Núm. 1-2011, según enmendada, 13 LPRA sec. 33112.[2] Empero, la mencionada acusación a nivel federal provocó que el Departamento de Justicia de Puerto Rico acudiera ante el Tribunal de Primera Instancia para solicitar la revocación de la sentencia suspendida. Por último, recalcaron la necesidad de culminar el descubrimiento de prueba para ser capaz de sustentar sus alegaciones y probar que el señor Colón Molina transportó y transfirió dinero dentro de Puerto Rico con el propósito de ocultar su procedencia y a sabiendas de que el dinero constituía ingreso derivado de alguna actividad ilegal específica.

A pesar de esos señalamientos, el 14 de marzo de 2023 el Tribunal de Apelaciones declaró no ha lugar la reconsideración. Así las cosas, los peticionarios acuden ante nos y señalan que el foro apelativo intermedio erró al determinar que no es necesario culminar el descubrimiento de prueba al amparo de la Regla 10.2 de Procedimiento Civil, supra, por entender que el señor Costas Elena y la señora Russell no tenían una causa de acción válida bajo la Ley Núm. 33, supra, y la Ley Núm. 22, supra. Por el contrario,

_____

[2]Ap. del certiorari, págs. 28-29.

a pesar de que se le concedió un término adicional para presentar su alegato, los recurridos no comparecieron.

Con el beneficio de la comparecencia de los peticionarios, expedimos el auto de <u>certiorari</u> y procedemos a resolver únicamente el señalamiento de error relacionado con la Ley contra el Crimen Organizado.

II

**A. *Moción de desestimación bajo la Regla 10.2(5) de Procedimiento Civil***

La Regla 10 de Procedimiento Civil faculta a la parte demandada en un pleito a presentar tres tipos de mociones antes de contestar la demanda: (1) moción de desestimación, (2) moción para solicitar una exposición más definida, y (3) moción eliminatoria. Reglas 10.2, 10.4 y 10.5 de Procedimiento Civil, 32 LPRA Ap. V. En lo que a la moción de desestimación se refiere, notamos que nuestro ordenamiento procesal civil permite que una persona solicite la desestimación de una reclamación judicial que se haya presentado en su contra, cuando de las alegaciones de la demanda surja que alguna defensa afirmativa derrotará la pretensión del demandante. <u>Eagle Sec. Police, Inc. v. Dorado</u>, 211 DPR 70, 78 (2023).

Específicamente, la Regla 10.2 de Procedimiento Civil, <u>supra</u>, establece que una parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento

del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** y (6) dejar de acumular una parte indispensable. (Negrilla suplida). González Méndez v. Acción Soc., 196 DPR 213, 234 (2016).

En lo que concierne a la controversia ante nos, en el pasado hemos establecido que al resolver una solicitud de desestimación fundamentada en que se deja de exponer una reclamación que justifica la concesión de un remedio, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. Eagle Sec. Police, Inc. v. Dorado, supra, pág. 78; Cobra Acquisitions, LLC v. Municipio de Yabucoa, 210 DPR 384, 396 (2022); González Méndez v. Acción Social *et al.*, supra, pág. 234. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307. La norma exige evaluar las alegaciones conjuntamente para auscultar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. Eagle Sec. Police, Inc. v. Dorado, supra, pág. 78; Cobra Acquisitions, LLC v. Municipio de Yabucoa, supra, pág. 396; González Méndez v. Acción Social *et al.*, supra, pág. 234.

Por lo tanto, para que un demandado prevalezca al presentar una moción de desestimación al amparo de la Regla 10.2 (5), supra, debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor. Ortiz Matías v. Mora Dev., 187 DPR 649, 654 (2013). Véase, J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo II, Publicaciones JTS, 2011, pág. 528. De hecho, en el pasado hemos expresado que la privación a un litigante de su "día en corte" es una medida procedente solo en casos extremos. Rosario v. Nationwide Mut., 158 DPR 775, 780 (2003). Ahora bien, si tras este análisis el Tribunal aún entiende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. R. Hernández Colón, supra, pág. 307.

### B. *Ley contra el Crimen Organizado y Lavado de Dinero*

El crimen organizado constituye una de las actividades ilegales más sofisticadas y complejas que atentan contra nuestra sociedad. Su modo de operación, por ser al margen de la ley, socava grandemente nuestra economía mediante el fraude, la corrupción y la fuerza. Exposición de Motivos de la Ley contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico, supra. En respuesta a

este mal, que ha adquirido gran magnitud con el pasar de los años, la Asamblea Legislativa aprobó la Ley Núm. 33, <u>supra</u>, habitualmente denominada como la Ley contra el Crimen Organizado. Una lectura de su texto revela un genuino interés del legislador en penalizar la conducta constitutiva del crimen organizado y el lavado de dinero, mientras dota a las agencias investigativas del Estado con nuevos mecanismos para su investigación. <u>Pueblo v. Meliá León</u>, 143 DPR 708, 742 (1997).

A fin de lograr este propósito, el Art. 3 de la Ley Núm. 33, <u>supra</u>, 25 LPRA sec. 971b, prohíbe las actividades siguientes:

(a) Será ilegal para cualquier persona que haya recibido ingreso derivado directa o indirectamente de cual patrón de actividad del crimen organizado o de la recaudación de una deuda ilegal, en que dicha persona haya participado como autor, según este término se define en el Artículo 35 del Código Penal de Puerto Rico, utilizar o invertir, directa o indirectamente, todo o parte de dicho ingreso, o el producto del mismo, en la adquisición de algún interés en, o en el establecimiento u operaciones de cualquier empresa o negocio.

(b) Será ilegal que una persona mediante cualquier patrón de actividad de crimen organizado o mediante la recaudación de una deuda ilegal, adquiera o mantenga, directa o indirectamente, cualquier interés en o control de cualquier empresa.

(c) Será ilegal que una persona empleada por o asociada a cualquier empresa o negocio, participe, directa o indirectamente, en la dirección de los asuntos de dicha empresa a través de un patrón de actividad de crimen organizado o mediante la recaudación de una deuda ilegal.

(d) Será ilegal que una persona se dedique a, participe en, o dirija cualquier patrón de crimen

organizado por medio de, o con ayuda de una empresa o negocio.

**(e)  Será ilegal que cualquier persona, por sí o a través de otra realice o intente realizar un acto o transacción financiera utilizando bienes provenientes, derivados o vinculados con una actividad ilegal específica en forma intencional o a sabiendas de que la transacción financiera ha sido planificada en todo o en parte para ocultar o disimular la naturaleza, localización, procedencia, titularidad o control de las ganancias de una actividad ilegal específica o para dejar de informar ingresos provenientes de dicha transacción en violación a lo dispuesto por las leyes del Estado Libre Asociado, del Gobierno Federal o de cualquiera de sus estados.**

**(f)  Será ilegal que cualquier persona transporte, transmita o transfiera o intente transportar, transmitir o transferir dinero o un instrumento monetario en el Estado Libre Asociado o hacia el Estado Libre Asociado desde cualquier punto en los Estados Unidos de América o desde un país extranjero con la intención de llevar a cabo actividades ilegales específicas o a sabiendas de que el dinero o el instrumento monetario constituye ingreso derivado de alguna actividad ilegal específica con el propósito de ocultar o disimular la naturaleza, localización, procedencia, titularidad o control de la actividad ilegal específica o para dejar de informar ingresos provenientes de dicha transacción en violación a lo dispuesto por las leyes del Estado Libre Asociado, del Gobierno Federal o de cualquiera de sus estados.**

**(g)  Será ilegal que cualquier persona incite o ayude a realizar una actividad ilegal específica, o a ocultar o disimular la naturaleza, localización, procedencia, titularidad o control de una actividad ilegal específica cuando existan razones para creer que los ingresos provienen de dicha actividad ilegal o cuando, para dejar de informar ingresos provenientes de dicha transacción en violación a lo dispuesto por las leyes del Estado Libre Asociado, del Gobierno Federal o de cualquiera de sus estados utilice un agente del orden público para llevar a cabo una transacción financiera.** (Negrilla suplida).

De forma paralela, el Art. 5 de la Ley Núm. 33, <u>supra</u>, 25 LPRA sec. 971d, establece las penalidades que conlleva una violación a las referidas disposiciones. Dicho artículo dispone, en parte, lo siguiente:

> […]
> Toda persona que viole cualquiera de las disposiciones **de los incisos (e) al (g) del Artículo 3 de esta ley incurrirá en el delito de lavado de dinero** el cual será delito grave y convicta que fuere será sancionada con pena de reclusión por un término fijo de veinte (20) años. De mediar circunstancias agravantes la pena fija podrá ser aumentada a treinta (30) años y de mediar circunstancias atenuantes la pena podrá ser reducida hasta un mínimo de quince (15) años. El Tribunal podrá imponer el pago de multa no mayor de quinientos mil (500,000) dólares o el doble del valor de la propiedad envuelta en la transacción, lo que sea mayor, o ambas penas a discreción del Tribunal.
> […]

Como podemos apreciar, el Art. 3 de la Ley Núm. 33, <u>supra</u>, prohíbe y criminaliza el delito por el cual los peticionarios acusan a los recurridos: el lavado de dinero.

Además de las repercusiones criminales, y en lo pertinente a la controversia ante nuestra consideración, el Art. 9 de la precitada legislación contiene mecanismos de naturaleza civil que el legislador provee para remediar e impedir su incumplimiento. En específico, dicho artículo dispone:

> (a) El Tribunal Superior de Puerto Rico tendrá jurisdicción para aplicar sanciones e impedir violaciones a esta ley, mediante órdenes apropiadas, incluyendo, pero sin limitarse a:
>
> 1) expedir auto de injunction o quo warranto;
> 2) ordenar la revocación de cualquier licencia, permiso o autorización sea de profesión, ocupación o negocio o de cualquier otra índole;
> 3) ordenar a la persona que se despoje de cualquier interés, directo o indirecto en cualquier empresa;

4) imponer restricciones razonables en la actividad futura o inversiones de cualquier persona, incluyendo el prohibirle que se dedique a la misma empresa o negocio en el cual ha estado envuelto;

5) u ordenar a la esfera administrativa correspondiente la remoción de cualquier empleado, o la disolución o reorganización o la sindicatura de cualquier empresa, protegiendo los derechos de personas inocentes.

(b) El Secretario de Justicia instará los procedimientos bajo este Artículo. En cualquier acción que se inicie por el Estado Libre Asociado bajo este Artículo, el Tribunal procederá con toda prioridad a la vista y determinación de la misma. Estando la determinación final del asunto pendiente, el Tribunal podrá, en cualquier momento dictar aquellas órdenes que crea convenientes, o tomar cualquier otra acción que proceda. El Tribunal impondrá las costas y honorarios al demandado.

(c) Una convicción y sentencia final a favor del Estado Libre Asociado de Puerto Rico en cualquier procedimiento criminal instado por éste bajo las disposiciones de esta ley, impedirán al demandado negar las alegaciones esenciales de la violación criminal en cualquier procedimiento civil que posteriormente se entable por el Estado Libre Asociado de Puerto Rico.

**(d) Cualquier persona que sufra daño en su negocio o propiedad por razón de una violación a las disposiciones del Artículo 3 de esta ley podrá demandar en el tribunal de justicia correspondiente y podrá recobrar compensación triple por concepto de los daños sufridos y los gastos incurridos en la demanda, incluyendo una suma razonable por concepto de honorarios de abogado.** (Negrilla suplida). Art. 9 de la Ley Núm. 33, <u>supra</u>, 25 LPRA sec. 971h.

En sintonía, el Art. 10 de esta ley dispone que "[l]os remedios o acciones de naturaleza civil para impedir violaciones a esta ley podrán instarse, **independientemente de la acción penal u otro remedio disponible en ley**". (Negrilla suplida). Art. 10 de la Ley Núm. 33, <u>supra</u>, 25 LPRA sec. 971i.

Al presente, esta ley ha generado poca jurisprudencia en Puerto Rico. Tan solo en dos ocasiones este Tribunal ha tenido la oportunidad de interpretar sus preceptos. Véase, Pueblo v. Santiago Feliciano, 139 DPR 861 (1995), en el cual avalamos la constitucionalidad de la disposición que autoriza la grabación de conversaciones orales no telefónicas durante la investigación del crimen organizado; y Pueblo v. Meliá León, supra, en donde establecimos qué constituye pertenecer o estar vinculado a una empresa criminal según los términos requeridos por la mencionada pieza legislativa.

### C. *Racketeer Influenced and Corrupt Organization Act*

Por otra parte, para afrontar el problema del crimen organizado a nivel federal, el Congreso de Estados Unidos aprobó la *Racketeer Influenced and Corrupt Organization Act*, Pub. L. No. 91-452, 84 Stat. 922 (1970), 18 USC sec. 1961 *et seq.*, comúnmente conocida como la RICO Act. En sí, esta legislación busca combatir y erradicar este mal en Estados Unidos por medio del fortalecimiento de las herramientas legales que guían el proceso de la recopilación de pruebas, al establecer nuevas prohibiciones penales y al proporcionar sanciones mejoradas y nuevos remedios para hacer frente a las actividades ilegales de quienes participan en el crimen organizado. Véase, A. Governale, K. Gilmer, El. Hadley, C. LaGumina y O. Okunola, *Racketeer Influenced and Corrupt Organizations*, 59 Am. Crim. L. Rev. 1279, 1280 (2022).

Sobre el particular, es importante señalar que el texto de la Ley contra el Crimen Organizado de Puerto Rico es esencialmente similar al de su homólogo a nivel federal, la RICO Act. Pueblo v. Meliá León, supra, pág. 743. Esto se debe a que nuestro estatuto está inspirado en objetivos similares a los que motivaron la legislación federal. Íd. Por ejemplo, igual que la Ley Núm. 33, supra, la RICO Act también autoriza sanciones penales y civiles a sus infractores. En ese sentido, dado que ambas leyes contienen incisos muy similares, en el pasado afirmamos que la jurisprudencia interpretativa del texto federal nos sirve como marco de referencia para ilustrar los contornos de nuestra ley, siempre que al hacerlo no se frustren los objetivos perseguidos por la Asamblea Legislativa y no se viole algún derecho protegido por la Constitución de Puerto Rico. Pueblo v. Meliá León, supra, pág. 743.

Al hablar sobre la jurisprudencia interpretativa de la RICO Act a nivel federal, no podemos obviar que el Tribunal Supremo de Estados Unidos ya se enfrentó a una controversia muy similar a la que hoy nos ocupa. En Sedima, S.P.R.L. v. IMREX Co., 473 US 479 (1985), el Tribunal se enfrentó a la incógnita de si para que proceda la triple compensación es requisito *sine qua non* contar con una convicción bajo las disposiciones de la RICO Act. Al establecer la doctrina vigente sobre este tópico, el Tribunal indicó:

> In sum, **we can find no support in the statute's history, its language, or considerations of policy for a requirement that a private treble-damages action under § 1964(c) can proceed only against a defendant who has**

**already been criminally convicted.** To the contrary, **every indication is that no such requirement exists.** Accordingly, the fact that Imrex and the individual defendants have not been convicted under RICO or the federal mail and wire fraud statutes does not bar Sedima's action. (Negrilla suplida). Sedima, S.P.R.L. v. Imrex Co., supra, pág. 493.

Como vemos, el Tribunal Supremo de Estados Unidos claramente estableció que no existe ningún requisito en la RICO Act que establezca que una acción privada de compensación triple por daños procede únicamente contra una persona que resultó convicta por cierto delito contenido en la mencionada ley. Por lo tanto, el hecho de que la corporación demandada o sus funcionarios no habían sido condenados bajo la RICO Act o estatutos federales similares, no priva ni prohíbe el encausamiento de una acción privada bajo esta legislación.

Más allá, el Tribunal Supremo de Estados Unidos estableció que para que proceda una reclamación de triple compensación al amparo de la RICO Act solamente se requiere que: (1) el demandado participe en una actividad prohibida por la sec. 1962 de la RICO Act y que (2) tal participación provoque un daño a la propiedad o negocio del demandante. Sedima, S.P.R.L. v. Imrex Co., supra, pág. 495.

Con el derecho aplicable debidamente formulado, pasemos ahora a resolver la controversia.

III

En el recurso ante nuestra consideración, los peticionarios sostienen que el Tribunal de Apelaciones erró al desestimar su causa de acción. Entienden que los remedios

civiles provistos por la Ley Núm. 33, supra, están disponibles aunque el causante del daño no haya sido convicto bajo las disposiciones del Art. 3 de la referida ley, supra, y aunque la reclamación no fuera instada por el Secretario de Justicia. Les asiste la razón.

De entrada, como mencionamos anteriormente, el remedio civil que solicitan los esposos Costas-Russell está contemplado en el Art. 9(d) de la Ley contra el Crimen Organizado, supra, 25 LPRA sec. 971h. Este artículo permite que **cualquier persona** que sufra un **daño** en su **negocio o propiedad** por razón de una **violación** a las disposiciones del Art. 3 pueda reclamar ante un tribunal y recobrar **compensación triple** por los daños sufridos y los gastos incurridos en la demanda, incluyendo una suma razonable para los honorarios de abogado. Íd.

Dicho de otra forma, este apartado crea una causa de acción privada a favor de todo aquel que sufrió un daño por culpa de la realización de alguna de las actividades prohibidas en el Art. 3 de la Ley Núm. 33. El estatuto **no exige una convicción criminal** por quebrantar las disposiciones del Art. 3 de esta ley, sino una **violación** a sus preceptos. En este contexto, reconocemos que una convicción va más allá de la violación, pues para la convicción es necesaria la sentencia de culpabilidad de un acusado. I. Rivera García, *Diccionario de Términos Jurídicos,* 3a ed. Lexis-Nexis, 2000, pág. 55.

Ahora bien, tampoco es que este remedio existe para compensar cualquier tipo de perjuicio que se pueda invocar, ya que el texto de la ley es muy claro en cuanto a que la triple compensación solo funcionará para indemnizar los daños sufridos en el "negocio o propiedad" de cada demandante, por causa de las actividades criminales que se le imputan al demandado. Por eso, para que las alegaciones al amparo de esta ley sean suficientes para sostener una reclamación de triple compensación, la reclamación debe incluir hechos que establezcan que: **(1) el demandado realizó las actividades prohibidas y (2) que hubo daños a la propiedad o negocios del demandante que sean consecuencia de esos actos prohibidos.**

En el caso ante nos, los esposos Costas-Russell solicitaron triple compensación por los alegados daños que sufrieron en su propiedad por culpa de los supuestos actos constitutivos de los crímenes de lavado de dinero y fraude tributario que se realizaron en la remodelación de un inmueble contiguo a su residencia. Esta conducta delictiva se encuentra entre las actividades ilícitas que condenan los incisos (e), (f) y (g) del Art. 3 de la Ley Núm. 33, supra. Así pues, a simple vista y evaluadas las alegaciones fácticas de la forma más favorable a los demandantes, es evidente que el señor Costas Elena y la señora Russell pueden tener una causa de acción válida respaldada por nuestro ordenamiento jurídico. Esto se debe a que, si prueban en su día sus alegaciones con evidencia admisible, cumplen con

todas las exigencias que dispone la ley para tener derecho a la triple compensación.

A diferencia de lo establecido por el foro apelativo intermedio, para que se active la compensación triple por daños no es requisito indispensable contar con una convicción bajo las disposiciones del Art. 3 de la Ley Núm. 33, supra, y, mucho menos, esperar a que sea el Secretario de Justicia quien inste la reclamación de daños a favor de los perjudicados.

Como veremos a continuación, del Art. 9(d) de la Ley 33, supra, 25 LPRA sec. 971h, y de la Exposición de Motivos de la Ley Núm. 84 de 9 de julio de 1986, infra, se desprende que el remedio civil de compensación triple podrá instarse **independientemente de la acción penal u otro remedio disponible en ley**. Por ello, aunque los peticionarios no hayan sido convictos por delito alguno relacionado al crimen organizado, ese factor no se debe considerar a la hora de evaluar si puede subsistir una reclamación de triple compensación en su contra. Es decir, para que la realización de alguna de las actividades prohibidas pueda dar lugar a una demanda como la de autos, no se requiere que haya mediado una convicción previa por esos delitos o que se aleguen hechos que establezcan los elementos de cada delito según el Código Penal.

Esta conclusión va a tono con la jurisprudencia federal afín a la controversia, que debemos utilizar como marco de referencia. Pueblo v. Meliá León, supra, pág. 743.

Recordemos que *Sedima* pauta lo siguiente: "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation". <u>Sedima, S.P.R.L. v. Imrex Co.</u>, <u>supra</u>, pág. 496. Esto es así ya que, como vimos:

> In <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), this Court **rejected** a restrictive interpretation of § 1964(c) that would have made it a condition for maintaining a civil RICO action both that the defendant had already been convicted of a predicate racketeering act or of a RICO violation, and that plaintiff show a special racketeering injury. (Negrilla suplida). <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 US 229, 236 (1989).

Por otro lado, tampoco es correcta la aseveración de que, al amparo del Art. 9(b) de la Ley contra el Crimen Organizado, el Secretario de Justicia es quien único puede levantar una reclamación para recobrar compensación triple por los daños sufridos por los ciudadanos. Si bien el Art. 9(b) dispone que "[e]l Secretario de Justicia instará los procedimientos bajo este Artículo", el Art. 9(d) es muy claro cuando establece que "**[c]ualquier persona** que sufra daño en su negocio o propiedad por razón de una violación a las disposiciones del Artículo 3 de esta ley **podrá demandar en el tribunal de justicia correspondiente y podrá recobrar compensación triple por concepto de los daños sufridos…**". Art. 9(b) y 9(d) de la Ley Núm. 33, 25 LPRA sec. 971h.

Para entender mejor el Art. 9 de la Ley contra el Crimen Organizado debemos evaluar su texto en su justa perspectiva y analizar detenidamente el historial legislativo. Al

realizar este ejercicio, notamos que el inciso (d) no era parte del texto que originalmente aprobó la Asamblea Legislativa cuando adoptó este estatuto en 1978. Ese apartado fue añadido posteriormente. Esta incorporación se dio por medio de la Ley Núm. 84 de 9 de julio de 1986, cuya exposición de motivos asevera que el propósito detrás de la enmienda fue atemperar nuestro ordenamiento jurídico a la legislación federal y a su jurisprudencia más reciente. Exposición de Motivos de la Ley Núm. 84 de 9 de julio de 1986 (1986 Leyes de Puerto Rico 278).

La legislatura local notó que la Ley contra el Crimen Organizado no había sido tan efectiva como su homóloga federal, a pesar de que ambas están dirigidas a combatir los mismos males. Entendieron que esto se podría deber a la falta de remedios civiles equivalentes que fomentaran un cumplimiento efectivo del propósito legislativo. Exposición de Motivos de la Ley Núm. 84 de 9 de julio de 1986, supra. En busca de optimizar el cumplimiento del estatuto, añadieron en 1986 el inciso 9(d) con el remedio civil de la triple compensación. Íd. Es importante resaltar que la enmienda se aprobó justo después de que el Tribunal Supremo de Estados Unidos estableció en el caso de Sedima que no se requiere una convicción criminal para sostener una reclamación válida de triple compensación al amparo de la RICO Act. Por tanto, no albergamos dudas de que la intención del legislador fue que nuestra Ley Núm. 33 proveyera el mismo remedio tal y como se reconoció en el caso de Sedima.

Conforme a lo establecido, cuando el Art. 9(b) de la Ley Núm. 33 hace referencia a que será el Secretario de Justicia quien inste los procedimientos bajo dicho artículo, en realidad se refiere a los trámites que se vislumbraban al momento en que se aprobó la ley. Estos trámites se encuentran en el Art. 9(a) y están dirigidos a impedir infracciones a esta legislación. Algunos de esos procesos son: solicitar la expedición de un injunction o *quo warranto*, requerir la revocación de cualquier licencia, o instar a que se despoje a cierta persona de cualquier interés, directo o indirecto en cualquier empresa. No obstante, ya indicamos que el inciso (d) se incluyó posteriormente y que, aunque se incorporó en el Art. 9 por constituir un remedio civil, la Ley Núm. 84 de 9 de julio de 1986 se encargó de plasmar incuestionablemente que **cualquier persona** que sufra un daño en su propiedad podrá instar la reclamación de **triple compensación** ante los tribunales, a tono con la RICO Act y su jurisprudencia.

Por todo lo aseverado, es evidente que los peticionarios pueden tener una causa de acción válida de triple compensación al amparo de la Ley contra el Crimen Organizado. De esta manera, no procedía desestimar su causa de acción. Recordemos que el foro primario no deberá desestimar ninguna reclamación a menos que se desprenda con toda certeza que, bajo una interpretación liberal, el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su

reclamación. <u>Ortiz Matías v. Mora Dev.</u>, <u>supra</u>, pág. 654. Por lo tanto, en vista de que los remedios civiles provistos por la Ley contra el Crimen Organizado pueden instarse independientemente de que exista una acción penal u otro remedio disponible en ley, debemos permitir que los peticionarios presenten la evidencia que estimen pertinente para probar su reclamo.

## IV

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones que confirmó la desestimación de la causa de acción de los peticionarios al amparo de la Ley contra el Crimen Organizado. Se devuelve el caso al foro primario para que los procedimientos continúen de forma compatible con lo aquí dispuesto.

Se dictará Sentencia en conformidad.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis P. Costas Elena y otros

     Peticionarios

        v.                 CC-2023-0237

Magic Sport Culinary Corp. y otros

     Recurridos

## SENTENCIA

En San Juan, Puerto Rico, a 16 de febrero de 2024.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca el dictamen del Tribunal de Apelaciones que confirmó la desestimación de la causa de acción de los peticionarios al amparo de la Ley contra el Crimen Organizado. Se devuelve el caso al foro primario para que los procedimientos continúen de forma compatible con lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez está conforme con las Secciones I, II(B)-II(C), III y IV de la Opinión del Tribunal y concurre con la Sección II(A).

                    Javier O. Sepúlveda Rodríguez
                Secretario del Tribunal Supremo